Good morning, Your Honors. My name is Tillman Hasha. I represent Abdullah Al Hemyare, the petitioner in this proceeding. We're before this court this morning seeking a remand or an order from the, a remand to the Board of Immigration Appeals with instructions to remand the immigration judge to retry the issue of the adjustment as well as to allow the petitioner to present his application for asylum and for withholding of deportation. Basically, the issue here is that the appeal focuses on two asserted errors, the BIA's affirmance of the IJ's denial of the adjustment and its denial of, this is a case where the IJ denied the petitioner his due process right to a full and fair hearing of his case, essentially by hectoring the petitioner and seeking to badger him into an admission that a, that he had in fact committed the act of prostitution, a charge which had been dismissed in the criminal proceeding. The petitioner had pled guilty to disorderly conduct, presumably on the basis that he was obstructing traffic, which is one of the bases for finding a disorderly conduct. The IJ in this regard departed from settled precedent when he tried to retry the case in essence. Immigration judges are not elected judges that have the authority to commit guilt. And that is in a sense what happened here. The judge also, his questions were very long, very argumentative. He did not allow the petitioner here to answer the questions. If he had simply said what happened on this particular day and let the petitioner tell in his own words what happened, that would be different. We are not saying that the judge cannot consider as a matter, in the exercise of discretion, what happened on a dismissed charge. What we are saying is the manner in which he asked the questions. Well, the rules do permit the immigration judge, I think the terms include interrogate and cross-examine. It does not have to be a simple, please tell me what you would like to tell me today. That is true, your honor. But when the judge starts saying you are lying until you tell me the truth, I am not going to grant your case in essence. Essentially, the petitioner here was faced with a Hobson's choice. Choice being that if he admitted, if he had admitted to the elements that the judge wanted him to admit to, namely that he had in fact committed prostitution, in fact the judge would not have had the discretion to grant him the adjustment because that would have been a statutory basis of inadmissibility. On the other hand... He could have been convicted of a statutory violation, but clearly he wasn't. He didn't have that conviction on his record. Right. But under section 212, it is sufficient if the alien either has been convicted or admits that he committed acts sufficient to constitute, to suffice for a conviction. So if he had in fact admitted this, the judge wouldn't have had the discretion to grant the adjustment in the first place. I think what judge... The concern that I have here is that the judge does in fact offer up the conclusion that your client solicited prostitutes. He says that and the only basis I can infer for that is the concession that was squeezed out in circumstances where the petitioner arguably had nothing else that could be said that would get the questioning to stop. And I think that's a legitimate concern. When I look at most of the due process cases, it seemed to me to speak to ability to present the case. That is, somebody's being cut off and not being allowed to present what their argument is. And I'm not sure that concern is quite so strong for this case. Well, Your Honor, there was numerous questions where the petitioner started to answer the question and the judge cut him off at a half stream before he could completely state what his answer to the question was. So we would argue that in fact he did not get a full opportunity to state his case. Well, witnesses are controlled, and this is a different context, but in a courtroom, for example, on cross-examination or under a hostile witness examination, witnesses are required and are often required by judges to focus and answer precisely and may get cut off if the counsel is asking a question which the witness isn't answering. And then later, during direct or redirect or other examination, the witness can expound as much as he wishes. Well, in this case... He's had opportunities to expound here that were not utilized. So is there anything really that wasn't said, maybe not at the moment that he wanted to say it, but was there anything that he didn't get a chance to say? Well, I don't think that he got an opportunity to fully explain what happened, because when his counsel on redirect attempted to elicit that information, the judge said, do you really want this to go into this again? And his counsel at that point said, no, I guess I won't. Well, you know, if you're going to pursue that line of argument, you really haven't made a showing that what more he should have been allowed to say that didn't get into the record, have you, that would have made a difference? Well, he wasn't really given an opportunity to say what happened on that day. He attempted to say, I was coming from the mosque, I was looking for an apartment... All right, so if he were able to say what happened on that day and he said it, would it have made a difference? Well, I would potentially, yes, Your Honor. Insofar as if he'd said... He never admitted that there had been an offer of money in the case, and in fact, he never actually admitted that he had solicited the prostitute. What about the timing of his discovery that he needed asylum? How long was he in the country before it occurred to him that he might want to claim asylum? Well, Your Honor, he was admitted in 1989 as a conditional permanent resident. The law is that he was placed in proceedings, I believe, in 1992 or 1993. He was in proceedings for seven or eight years, wasn't he? That's correct, Your Honor. The thing is that a person, until there's a final order, a person who is a permanent resident, even after their conditional status has been terminated, remains a permanent resident until there's a final administrative order depriving him of his status, matter of lock, and other cases. In this instance, the petitioner was still fighting his appeal on the original deportation order and then moved for a remand to find an alternate basis for adjustment, but he still had, and still has to this day, permanent resident status because it hasn't finally been terminated. And under the regulation, under the statute, the filing later than a year is excused if there are extraordinary circumstances. The regulation is one of the extraordinary circumstances. Doesn't it go to the credibility of a claim of asylum if it doesn't occur to a person for seven or eight years that he might be entitled to asylum? Well, but the immigration regulations recognize that if a person already holds permanent resident status, that may defer or delay the person's claim for asylum because he still has a better status, in fact. And in this particular instance, the facts that gave rise to his claim didn't really start until 1994, namely his activity in organizing interfaith activities and seeking a resolution of the Israeli-Palestinian conflict or discussions on that subject. The other thing to note in this case is that the board, in reviewing and denying the motion to remand, totally ignored the fact that he did in fact submit a credible affidavit and saw significant corroborating evidence to that effect. It said there was no evidence in the record. So it didn't read the record. It's the only thing that wouldn't conclude. So we would ask that the case be remanded to the board with instructions to remand to the immigration judge for determination on both the adjustment and the asylum application. Having thoroughly occupied your time, we'll still give you a minute for rebuttal. Excuse me? We'll give you a minute for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Leslie McKay for the Respondent, Alberto Gonzalez. I'd just like to quickly address the hearing before the immigration judge before I turn to the motion to remand to the board. As Your Honors noted, immigration judges have to interrogate, examine, and cross-examine the alien or any witnesses. In this case, the immigration judge was merely reasonably exploring petitioner's past conduct in the context of determining whether to grant him adjustment of status as a matter of discretion. And this Court has held in Campos-Granillo 12F3rd 849 that unfavorable discretionary factors include, quote, the existence, seriousness, and recency of any criminal record and other evidence of bad character or the undesirability of the applicant as a permanent resident. That's what the immigration judge's questions were designed to elicit. And I think it's important to note in this case that the cases relied on by petitioner regarding findings of bias or findings of inappropriate conduct by the immigration judge have uniformly involved situations where the immigration judge cut off significant testimony, refused to allow testimony or evidence to come in. And in this case, that simply wasn't the case. Petitioner had full direct examination, which was voluntarily concluded by his counsel. Cross-examination went on in full. That's when the immigration judge began his significant questioning on the solicitation charge. And his questions actually were born from the inconsistency that developed during cross-examination. It's not like the immigration judge sort of went far afield from where the hearing was going. It simply was that on direct testimony, the alien had testified no. It was all sort of a misunderstanding between me and the policewoman. And on cross-examination, when the DHS attorney started going through the information in the police report, is this what happened? Yes. Is this what happened? Yes. Now you have a material conflict in testimony. And that's what the immigration judge really was pursuing. After his questioning concluded, during which time he did entertain objections from petitioner counsel, the immigration judge finished his questioning, offered petitioner's counsel an opportunity for redirect, which was taken briefly, offered DHS counsel another opportunity to question, and then gave petitioner's counsel two chances to present closing argument, both of which were declined, at which point the immigration judge took a 20-minute recess before coming back to issue his oral decision. I think the record as a whole in this case, if you read it, cumulatively demonstrates an immigration judge who was very concerned about balancing the discretionary factors appropriately at providing this alien with due process. He, in fact, discussed this due process and the balancing of factors, not only at both master calendar hearings, but at the merits hearing prior to direct testimony. So in that sense, you have... Let me focus on this, and the piece that I think is the most interesting appellant's argument. The IJ's decision, he's weighing these things, he talks about compartmentalize, and in particular on page 8 of his decision, AR 158, he says that within the last year and a half, he solicited prostitutes, plural, and then he came to court and he lied about it. This is too much. It seems to be a factual finding there of actual solicitation and of coming to court and lying about it. I'm not sure how strong the evidence is to support those propositions, other than the responses which in some fashion appear to have been squeezed out of the witness in a way where the witness may simply have been trying to stop the barrage of questions. Can we fairly say there's substantial evidence to support those particular factual conclusions? Well, Your Honor, I suppose I have two responses. First, the immigration judge, I think, by the end of the hearing was very frustrated and felt that the testimony had not been truthful, and I think to the extent that petitioner suggests he was kind of put in a position of having a Hobson's choice, I think his choice was to be, actually was to be up front about his prior conduct at the start of the hearing, or especially even on cross-examination. But I think it's clear from the immigration judge's decision that he relied on more than just this performance on the stand or this, he certainly, it wasn't the, I don't think the fact that he believed that petitioner solicited prostitution, it was the fact that he believed petitioner had not been forthcoming about that conduct, again, in the context of a discretionary grant. And in that regard, it's important to note that the immigration judge actually relied on at least three factors in his ultimate finding. The testimony of both immigration judge hearings, there was a 1997 hearing, and evidence that petitioner had violated a restraining order and had harassed his first wife, and finally, lack of hardship evidence regarding the petitioner or his family. Now this finding, then, is put into the context of the board's order, which is very thorough, which goes through, as your honors probably know, is much longer than the board orders that many cases that we see, and they balance those same factors against the positive equities in this case. So you do have a full balancing of the factors, and I don't think that the immigration judge's frustration about this issue that occurred during trial was really the sole deciding factor. He certainly wasn't passing any moral judgment against the alien or saying, it's this one thing and that is it. There were a number of factors that came into play. I mean, I want to be fair about this. We have to view this through a due process lens because the decision is discretionary, and so I don't want to leave you with the wrong impression. I understand that. But when I try to figure out, well, what's the impact here? I mean, I don't hold you at all accountable for the IJ's potential lack of civility, and the circumstances are what they are. We all get the cases as they are. This wouldn't be the epitome of what you'd really want an adjudicator to be doing. Press hard to get responses, but do it in a way that you don't seem to lose your objectivity. And so now we're in a position of trying to evaluate this not on substantial evidence grounds, but on due process grounds. And as I say, that's the piece that gives me pause. To what extent can we say that in the end, the decision being made by the adjudicator was one that reflected due process? Right. And I think two things most important in the context of that is to look at sort of the case history of this court and the cases, petitioner sites, that do find bias or inappropriate conduct on the part of the immigration judge. And I think those cases are materially different from this case. And the second part, as I believe Judge Toshima pointed out, prejudice absolutely hasn't been established. And so even if in this case you want to find that there was some error on the part of the immigration judge, petitioners haven't come forward with any showing of prejudice or how the outcome of proceedings would have been different. Again, based on the complete balancing of factors by not only the immigration judge, but by the board, they haven't identified any point before the immigration judge at which they wish to, but were not allowed to provide further testimony or evidence. And it's reasonable to expect a petitioner to proffer or identify some point in the hearing where they were prevented from, he was prevented from presenting his case. And with that, if there are no further questions about the immigration judge, if I could quickly turn to the motion to remand before the board. I just want to really make clear to the court that a motion to reopen like this, in this posture, when you have one proceeding before the immigration judge that's appealed, remanded back to the immigration judge again and appealed, now you're before the board. A motion to reopen that seeks asylum in the first instance at that point is governed by 1208.4B4 of the regs, which mandates that the alien reasonably explain his failure to previously apply for asylum before the immigration judge. That's what the board's decision is focused on. Petitioners argument that because he had temporary status of some kind that that ameliorates his untimely finding. Really, for lack of a better way to put it, is mixing apples and oranges. That reg is 1208.4A5, and that applies to untimely findings under section 208B2 of the act. That's not at all what we have here. We have the board saying, listen, even if these activities that you allege didn't begin to occur until 1994, you were at hearings and had decisions from the immigration judge in 1997 and 2002. You certainly could have, at some point during that time, if you had a legitimate fear of being returned to Yemen, you could have put your asylum application before the immigration judge at that time. Petitioner's explanations for his failure to do so simply aren't reasonable. It wasn't an abuse of discretion for the board to find that, and that's why the last paragraph, the no prima facie evidence, is really an alternative finding. This court doesn't even need to reach it, but it's important to note that the board certainly considered this whole record. There's a presumption under Lareda Martinez that they did. That presumption hasn't been rebutted. You can't simply look at the board's order and take their, in their first sentence, they use the words, quote, no evidence. You can't take those words out of the context of the rest of the paragraph, which includes a site to matter of Mengesar and a parenthetical regarding prima facie eligibility. With that, if there are no further questions, I'll respectfully request that the petition be denied. I'm going to get to that. I want to ask you one question. Your Honor, footnote 10 in the matter of storage states, the board has recognized in other settings the principle that an alien's lawful permanent resident status does not cease until the entry of a final administrative order removing the alien from the United States generally where the board renders its appellate decision. The fact of the matter here was that the petitioner is and remains a permanent resident. That was a reason that his deferring or not filing an asylum claim was a reasonable choice in this matter because of the fact that he had a better status. Well, that may be good litigation strategy, but doesn't it make it kind of problematic to say, aha, I've got a claim, a good claim now for asylum when he's been here for nine or ten years in court playing out this other litigation about the permanent residency? You can answer the question, either it's a red light or a green light. Well, Your Honor, no, I think that given the fact that permanent resident, I mean, yes, he had lost his deportation hearing before Judge Warren in 1997, and then he had this other basis on the employment petition that was going to grant him permanent or confirm his permanent residence. That was a better benefit than what he had before, and we don't normally require permanent residents to also file asylum applications because we presume that they are protected as long as they have status here. Let me ask you another question about the due process aspects of the hostile questioning by the IJ. Assuming that we did suppose we could find that there was a due process problem here and remand it. As a practical matter, what benefit is it going to give this petitioner to have a remand when he's got these other problems in his file? How is there any chance that a less hostile IJ would reach a different result than this one did? Well, he would have a new opportunity to present his case, and I would concede that the principal focus of his case on a remand would be on the asylum, in the asylum area, not in the adjustment. Thank you. Thank both counsel for their arguments. The case just argued is submitted. The next case on this morning's calendar is Thornton v. City of St. Helens. For reference of remaining counsel, we will take a very short recess after this argument and before the two arguments that follow. We will now hear from counsel in the Thornton v. St. Helens case.
judges: Goodwin, Tashima, Clifton